IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| CARMEN NORA TOMEY | * | |
| --- | --- | --- |
| Plaintiff, | * | |
| v. | * | Civil No. L-09-390 |
| BALTIMORE COUNTY, *et al.* | * | |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM**

This is a pro se civil rights action filed by Mark and Carmen Tomey ("the Tomeys").[1] Now before the Court is the Defendants' Motion for Summary Judgment. Docket No. 50. Because the issues are adequately addressed in the briefs, no hearing is necessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated herein, dismissal of the Tomey's case with prejudice, rather than summary judgment for the Defendants, is the proper disposition. The Court will, therefore, order dismissal of the case sua sponte and DENY the Defendants' Motion AS MOOT.

**I.  BACKGROUND**

The procedural history of the Tomeys' case is extensive. They first filed suit on February 23, 2009 against Defendants Baltimore County, Andrew Goeb, and Rebecca Daniels.[2] The myriad allegations contained in the Complaint were summarized as follows in the Court's Memorandum Opinion of March 3, 2010:

---

[1] Following the Court's March 9, 2010 Order dismissing several of the Tomeys' claims, discussed infra, Mark Tomey has not been a proper Plaintiff in the case. For ease of reference, however, the Court will refer to the Tomeys collectively as Plaintiffs.

[2] Goeb was, at the time of the events in question, a case worker with the Baltimore County Department of Social Services ("DSS"). Daniels was a Code Enforcer for Baltimore County.

1

> In April 2004, Margaret Tomey ("Margaret"), Mark's mother, removed her late husband's name from a deed of raw land and added Mark's name. Two months later, she added his name to an additional piece of property. She also signed her power of attorney to Mark, sold him a piece of John Deere equipment for $1.00, and took out a loan to "help Mark and Carmen." Contemporaneously to these events, Margaret was diagnosed with early onset Alzheimer's disease.
>
> In early 2006, DSS visited the Tomey household and Andrew Goeb, a DSS caseworker, began "harassing Mark." In February 2006, DSS filed a petition for guardianship on behalf of Margaret in the Circuit Court for Baltimore County. During the guardianship hearing, Goeb testified to "all types of non-germane information . . . to build up [the] guardianship case." At the conclusion of the hearing, the court appointed Nora Tomey, Margaret's daughter, as guardian of Margaret's person and appointed Jerry Lamdin as guardian of her property.
>
> On February 18, 2006, Goeb, accompanied by the police, arrived at the Tomey home and informed Carmen that they were taking Margaret for an examination. When Carmen objected to them entering the house to retrieve Margaret's effects, Goeb instructed the police to grab her. Goeb, along with Rebecca Daniels and the police, then entered the home. Afterwards, according to the Complaint, Carmen was "dragged away in handcuffs," and taken to the Cockeysville, MD police station, where she was chained to a wall for eight hours and denied a phone call.

Mem. Op. 2, Docket No. 27. The Court determined that, read in the light most favorable to the pro se Plaintiffs, the Complaint asserted the following claims: (i) that Defendants had conspired to gain control of Mark's Mother, Margaret Tomey, and her property, (ii) that Defendants had slandered Mark and Carmen, and (iii) that Defendants had violated Carmen's civil rights by using excessive force during her arrest. Id. at 3.

The Defendants moved to dismiss the Complaint. After full briefing, the Court granted the Motion with respect to all but the third claim. Id. at 1. The Complaint alleged that, in arresting Carmen, the police had wrenched her shoulder so badly that she later required medical attention and that in subsequently handcuffing her to the wall at the police station they had

exacerbated the injury. The Court ruled that these claims, if substantiated through discovery, might state a claim for excessive force under 42 U.S.C. § 1983. Id. at 5. Goeb and Daniels were dismissed from the case, and the Tomeys were granted leave to supplement their Complaint with the names of the individual officers involved in the incident.

The Tomeys subsequently amended their Complaint to name as Defendants officers McGraw, Sabotka, and Jednorski, the individual police officers involved in the events of February 18, 2006 ("the Officers"). The Officers and the County then moved once more to dismiss the Complaint. On June 6, 2010, the Court denied the Motion and ordered that the case proceed to discovery. Docket No. 43.

Since the denial of the Defendants' first Motion to Dismiss, the scope of the Tomeys' case has been clearly defined. Nevertheless, the Tomeys have filed numerous letters attempting to argue issues that are not part of the litigation. See Docket Nos. 31, 33, 44, 46, and 48. These letters recite, in some detail, a lengthy family history of infighting over the care of Margaret Tomey and the disposition of her assets. They charge myriad violations of elder care and guardianship law, and repeatedly take the judicial system to task for alleged mishandling of the Tomeys' family affairs. They also charge a broad conspiracy among the police, the Department of Social Services, and the Maryland state courts to violate the Tomeys' civil rights through, inter alia, harassment, race discrimination, defamation, and invasion of privacy.

On April 15, 2011, the Defendants filed a close-of-discovery status report as directed by the Court. It recited that the Tomeys had failed to file Rule 26(a) initial disclosures as ordered, failed to respond in any way to the interrogatories and requests for production of documents served on them by the Defendants, and had not otherwise engaged in the discovery process. See Docket No. 49.

The Defendants contemporaneously filed the Motion for Summary Judgment now before the Court.  Docket No. 50.  The Court mailed the Tomeys a standard letter informing them that a dispositive motion had been filed in their case, and that failure to respond within the appointed time could result in judgment being entered against them.  Docket No. 51.

On May 10, 2011, more than one week after the deadline for responding to the Defendants' Motion, the Tomeys filed three papers with the Court.  The first is a change of address form, reflecting a move from Maryland to Pennsylvania.  Docket No. 52.  The second is a letter, protesting that the Tomeys never received copies of the Defendants' interrogatories or Motion for Summary Judgment, accusing both Defendants' counsel and the Court of attempting to deny them justice through manipulation of the litigation process,[3] and demanding that Defendants' counsel be held in contempt.  See Docket No. 54.  The third is a Motion requesting that the Defendants be ordered to direct all filings to the Tomeys' new address, that discovery be reopened and all papers re-served, and that Defendants' counsel be sanctioned.  See Docket No. 53.

On May 19, 2011, the Tomeys filed a response in opposition to the Defendants' Motion for Summary Judgment.  Docket No. 55.  Like the Tomeys' previous correspondence and motions papers, it principally addresses matters not at issue in the instant litigation.

## II.    STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[3] *E.g.*, "NEVER should a lawyer be allowed to use his expanded expertise of the law to unscrupulously take advantage of laymen while the courts take a blind eye to such behavior. . . . As a naturalized Hispanic American citizen, I should expect to see my civil rights guarded against the discriminatory and abusive behavior exhibited by the Baltimore County Police officers here, or should I only expect justice if I am African-American?" Correspondence 2, Docket No. 54.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

### III. ANALYSIS

Suing someone is serious business. Throughout the course of the pending litigation, however, the Tomeys have made clear that they are less than serious about diligently pursuing their case. Rather, they have shown themselves wholly unwilling to focus on the one cause of action that the Court has ruled they may properly assert. Despite being given every opportunity to prove a meritorious claim, they have chosen instead to use their case as a rostrum from which to protest various other perceived injustices. On this basis, the Defendants have requested summary judgment. Because the record has not been fully developed, however, dismissal of the Tomeys' case is the more appropriate disposition.

"District Courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." Hinkle v. City of Clarksburg, 81 F.3d 416, 426 (4th Cir. 1996). Federal Rule of Civil Procedure 37(b)(2)(C)

states that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just" including "[a]n order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." Fed. R. Civ. P. 37(b)(2)(C). Federal courts routinely order dismissal as a sanction. See, e.g., Porter v. Guarino, 223 F.R.D. 282, 284 (M.D.N.C. 2004) (dismissing a case with prejudice based upon the plaintiff's failure to cooperate in discovery and failure to comply with the Court's discovery orders); McClain v. James M. Pleasants Co., Inc., No. 1:04CV1208, 2006 WL 435729, at *2 (M.D.N.C. Feb. 22, 2006) (dismissing plaintiff's case for failure to comply with the scheduling order and to participate in discovery).

The Court issued a Scheduling Order in this case explicitly providing that discovery would close on February 28, 2011. Docket No. 42. Because the Tomeys are unrepresented by counsel, the Court included the letter that is sent to all pro se litigants. The letter, which is written in plain English, outlines the discovery process and sets out the deadlines by which the parties must abide. It also identifies the federal and local rules that govern discovery and directs the pro se litigants to where they may obtain copies of the rules. Despite multiple extensions of the discovery deadline, the Tomeys have failed to respond to any of the Defendants' discovery requests.[4] They have offered no convincing justification for their nonperformance, and they have given the Court no reason to think that, if discovery were reopened, they would take their obligations seriously. Faced with the Tomeys' utter failure to participate meaningfully in their own case, as well as their blatant disregard of the Court's orders concerning both scheduling and the scope of their permissible claims, the Court sees little choice but to order the dismissal of their case.

---

[4] Nor, so far as it appears, have the Tomeys attempted to serve discovery requests of their own.

Nor may the Tomeys' failure be excused on the dubious grounds of their relocation and purported failure to receive discovery requests and court documents. All plaintiffs have an affirmative duty to actively monitor the progress of the lawsuits they bring and a responsibility to take steps to ensure the smooth progression of litigation. The Local Rules of this court—as well as common sense—dictate that a party inform both the Court and opposing counsel immediately following any change in address.[5] Moreover, the Tomeys had every reason to expect that documents pertaining to their case would continue to be sent to their address of record. Any failure to receive filings and correspondence in a timely fashion, therefore, lies entirely with them.

Although the Tomeys' case is properly dismissed as a sanction, the Court, nevertheless, has reviewed the factual record provided by the Defendants in support of their Motion and finds no cause to be uneasy about its decision.[6] The affidavit of Lt. Robert McGraw states that, on February 13, 2006, he and Officer Deborah Sabotka travelled to the Tomey residence to assist the Department of Social Services in taking Margaret Tomey for an examination pursuant to an order issued by the Baltimore County Circuit Court. McGraw Aff. 2, Docket No. 50-2. Lt. McGraw states that upon their arrival, Carmen Tomey denied them access to the house and physically blocked their way. Id. at 2–3. After several warnings that failure to comply with the Officers' instructions would result in her arrest, Carmen was handcuffed by Lt. McGraw and taken from the scene. Id. at 3. Lt. McGraw affirms that the arrest was accomplished peacefully,

---

[5] Local Rule 1.2.1(b)(iii) provides: "Pro se litigants must file with the Clerk in every case which they have pending a statement of their current address. If a pro se plaintiff resides outside of the District, the party shall keep on file with the Clerk an address within the District where notices can be served. <u>These obligations are continuing, and if any pro se litigant fails to comply with them, the Court may enter an order dismissing any affirmative claims for relief filed by that party</u> and may enter a default judgment on any claims asserted against that party," (emphasis added). The Scheduling Order filed by the Court on October 7, 2010 specifically admonished the Tomeys to read and comply with the Local Rules. See Docket No. 42 at 1 n. 1.

[6] The Federal Rules provide that a party who fails to participate in discovery may be precluded from offering evidence in opposition to a motion for summary judgment. See Fed. R. Civ. P. 37(c)(1).

7

and that Carmen cooperated without a struggle. Id. An affidavit submitted by Officer Sabotka confirms this version of events, and similarly states that Lt. McGraw performed the arrest without the use of physical force. Sabotka Aff. 2–3, Docket No. 50-2. Officer Brian Jednorski then transported Carmen to the Cockeysville police station, where he completed her booking paperwork. McGraw Aff. 3, Docket No. 50-2; Sabotka Aff. 3, Docket No. 50-2; Jednorski Aff. 3, Docket No. 57-1.

The record as it stands presents no evidence of excessive force, or indeed any force at all. The Officers recount that Carmen was compliant during her arrest and processing, and that no physical compulsion was necessary. The Court has been offered no reason to mistrust their account, and there is no other indication that Carmen Tomey's civil rights were violated.[7] The Defendants would, therefore, likely be entitled to summary judgment in any event.

### IV. CONCLUSION

For the foregoing reasons, the Court will, by separate Order of even date, DISMISS the Amended Complaint and CLOSE the case. In light of this disposition, the Defendants' Motion for Summary Judgment (Docket No. 50) will be DENIED AS MOOT. The Court will further GRANT the Tomeys' Motion insofar as it requests that all papers be sent to their new mailing

---

[7] Noticeably absent from the Defendants' factual submissions is any mention of the treatment Carmen Tomey received after being brought to the Cockeysville police station beyond a brief search of her person and the preparation of paperwork related to her booking. Specifically, the Officers never attempt to deny Carmen's claim that she was handcuffed to the wall for an extended period of time. Nevertheless, summary judgment would in all likelihood be appropriate on this claim as well.

Claims of pretrial detainees are analyzed under the Substantive Due Process Clause of the 14th Amendment, under which the detainee may not be subjected to "punishment." Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir. 2005). A plaintiff must demonstrate either a subjective and express intent to punish or that the defendant acted with deliberate indifference to an excessive risk to the detainee's health and safety. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Farmer v. Brennan, 511 U.S. 825, 837 (1994). Carmen has made no allegation, and the record contains no evidence, that any such treatment was subjectively and expressly intended to punish her. Nor, in light of the Defendants' uncontroverted evidence concerning the lack of a struggle during Carmen's earlier arrest, would there have been any risk to health or safety for the police to disregard. Finally, there is no indication that Carmen suffered a serious physical or emotional injury as a result of the challenged conditions. See Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993).

address, and DENY the Motion as to the Tomeys' requests to re-open discovery and for sanctions.

Dated this 14th day of June, 2011.

                                                                                        _____/s/_____
                                                                                        Benson Everett Legg
                                                                                        U.S. District Judge